IN THE MATTER OF JAMES A. RENO, AN ATTORNEY AND COUNSELOR AT LAW, RESPONDENT.

No. 14689.
April 9, 1980.
609 P.2d 704.

James P. Murphy, Billings, Arnold Huppert, Jr., Livingston, for appellant.

James A. Reno, pro se.

Willis B. Jones, Billings, for respondent.

ORDER PER CURIAM:

In a formal complaint the Commission on Practice of the Supreme Court of the State of Montana charged respondent with professional misconduct in three specific instances set forth in the three counts in that complaint.

Pursuant to the Rules of this Court and its Commission of Practice, pleadings were filed, testimony taken, motions made, and a

full formal hearing held. Following the hearing the Commission on Practice made its findings and recommendations. Thereafter respondent filed exceptions to the Commission's report, findings of fact and recommendation. Briefs were filed by all parties and the matter has been submitted to us for review and decision.

One of the three counts considered by the Commission was dismissed on its finding that respondent did not violate any provisions of the Code of Professional Responsibility with regard to the transaction involved.

Another count involved a loan by respondent as guardian of the estate of May Beck to a Colorado Corporation. The Commission set forth the record evidence as to this count on pages 1 through 8 of its report. It set forth the applicable law and Canons of Professional Ethics on pages, 8, 9, 10 and 11 of its report, specifying the following statutes and sections of the Canons of Professional Ethics adopted by the Supreme Court of the State of Montana on September 28, 1965, and supplemented in 1973, which are applicable to respondent's conduct: 91A-5-417, 72-20-201, 72-20-203, 72-20-204, 72-20-207 and DR1-102, DR5-101, DR5-104, DR5-105, DR5-107 and DR6-101.

The Commission found that the respondent violated the foregoing statutes and Canons of Legal Ethics in the following respects:

"(1) A false inventory and appraisement was filed in the May Beck Guardianship.

"(2) Viewing the evidence in the light kindest to Respondent, Mr. Reno in his position of trust made a speculative loan to an out-of-state corporation and had a direct conflict of interest in that he was a shareholder, director, officer and attorney for the corporation.

"(3) Mr. Reno filed a final accounting with the Court which was false in that it sets forth that there was a mortgage balance of $22,127.24, when in fact there was no property to be secured by a mortgage.

"(4) If in fact there was a note secured by a mortgage then Mr. Reno failed to protect the Guardianship by recording the mort-

gage and having the property secured by the mortgage covered by insurance.

"(5) The house was destroyed in 1973. In October it will be six years since the purported security was lost and Mr. Reno has taken no action whatever to either collect from the defunct corporation or to notify the bonding company.

"(6) Mr. Reno signed and filed false annual corporation statements with the Secretary of State of the State of Colorado.

"(7) He has failed to notify the Court of the dire situation that the Guardianship assets have in fact been dissipated.

"(8) Mr. Reno has made no attempt to reimburse the guardianship for the loss resulting from the violation of his trust even though he has received a fee of $100,000.00 (Tr. 441-443) and apparently has a good practice as an attorney at law.

"(9) He filed a false petition for the appointment of himself as Personal Representative of the estate of May Beck in that he alleged that he was a creditor of the estate, when in fact he was indebted to the estate for the loss sustained in the guardianship. He also alleged that there were no known heirs when the guardianship records in fact show that there were heirs.

"(10) Mr. Reno never disclosed to the Court or the heirs of May Beck that he was in fact representing the corporation when making a speculative loan to that same corporation.

"(11) He has shown a callous disregard of the rights and interests of the beneficiaries of the May Beck estate."

On another count respondent was charged with a violation of DR1-102 in that allegedly his conduct involved dishonesty, fraud, deceit, or misrepresentation; and that he engaged in deceitful conduct for which he could be guilty of a misdemeanor in accordance with section 37-61-406, MCA, (1978), formerly section 93-2105, R.C.M.1947.

On this count the Commission made the following findings:

"In the spring of 1970, Respondent Attorney undertook to represent Lynn Steinmetz on a charge of felony possession of dangerous

drugs. Trial took place on May 11, and 12, 1970, in the Thirteenth Judicial District, Yellowstone County, Montana. The Respondent's client was found guilty on May 12, 1970, and the Respondent Attorney filed a Notice of Appeal in Yellowstone County, Cause No. 7915, on May 15, 1970.

"The Respondent did not have constant contact with his client, but instead dealt on occasion with his client's mother, one Betty Steinmetz, since the Respondent's client resided for a time in the State of Colorado.

"For the Steinmetz appeal, the Respondent Attorney charged $1,200.00 and the cost of the transcript was $350.00 (Ex. 19).

"On or about December 3, 1970, the Respondent Attorney received an Order to Show Cause from the Montana Supreme Court requiring him to show cause within ten days why his appeal should not be dismissed for failure to follow court rules, since he did not file a brief or get an extension to do so. He was given until December 23, 1970, to file the brief; however, no brief was ever filed by Respondent Attorney.

"Later, without his client's knowledge or consent, the Respondent Attorney entered into negotiations with G. Todd Baugh, a Deputy County Attorney of Yellowstone County. On May 8, 1972, Respondent Attorney stipulated to the County Attorney's office that the appeal to the Montana Supreme Court would be dismissed.

"Strangely, on May 15, 1972, the Respondent telephoned his client's mother Betty Steinmetz, and told her that the case had been thrown out by the Supreme Court, but he did not know the reason and would let her know as soon as he found out. He would send her a copy of the Court's Order (Ex. 15, Tr. 195). Respondent Attorney testified he told Betty Steinmetz that the appeal was dismissed in 1972 (Tr. 402). The Respondent insists that he told Betty Steinmetz that the case was dismissed by Judge Luedke and not the Supreme Court (Tr. 426).

"Betty Steinmetz repeatedly called Respondent Attorney and asked him about the disposition of her son's case. She also wrote several letters to the Respondent (Ex. 14, 16, 17). Although Betty

Steinmetz was not the Respondent's client (Tr. 344), the Respondent dealt with her on occasion even though he testified that his client, Lynn Steinmetz, told him not to talk to her (Tr. 431).

"Betty Steinmetz complained that Respondent Attorney did not keep appointments with her and never explained the facts of the appeal to her (Tr. 196).

"Lynn Steinmetz was generally satisfied with the Respondent's representation of him, since he received a deferred sentence and spent very little time in jail (Tr. 168-170). Lynn Steinmetz did complain that he could not find out the status of his appeal when he was in the State of Colorado and never received any word from his attorney (Tr. 171). Respondent testified Betty Steinmetz was very upset that her son was convicted and did not want him to spend 60 days in jail, although he received a deferred sentence (Tr. 191). She was worried that her son would always have a criminal record and would not be allowed to vote (Tr. 176).

"After several years of apparent inaction and lack of communication, Respondent mailed a copy of the Thirteenth Judicial District Court Order *signed* by Judge Luedke, *dated* June 16, 1972, to Betty Steinmetz. The Order was *filed* on October 15, 1975. There is no question that the Order, although dated June 16, 1972, was not signed by Judge Luedke until on or about October 15, 1975.

"Betty Steinmetz felt that the Respondent Attorney deceived her son and herself (Tr. 189-193). She pointedly stated 'you have to trust your lawyer' (Tr. 189). She felt when the Respondent phoned her on May 15, 1972, and said the Supreme Court threw out the case she felt that her son was "free and clear" from the felony conviction of possession of dangerous drugs. She thought her son had been exonerated of everything (Tr. 195). She also felt that it would be better to have her son cleared from the Supreme Court than waiting for his probation to terminate and have his deferred sentence set aside (Tr. 197).

"Betty Steinmetz was disturbed when she found that Judge Luedke signed the Order in 1975 and not in 1972 (Tr. 201). Betty

Steinmetz and her son wanted the Supreme Court to hear her son's case on its merits; however, the case was dismissed by the Respondent, and Lynn Steinmetz did not have his day in court (Tr. 204, 207).

"The Respondent countered Betty Steinmetz'a allegations of fraud, deceit and misrepresentation by testifying that he filed the Notice of Appeal to get Lynn Steinmetz out of jail, but there was really no chance of winning on appeal, and, therefore, he did not file a brief (Tr. 335, 336, 406). Respondent felt since he could lose the appeal he had no alternative but to stipulate with the County Attorney to dismiss it (Tr. 338). Respondent also indicated that he did not inform Betty Steinmetz that the Supreme Court had exonerated her son. He performed the services of preparing and filing a Notice of Appeal, entering into a stipulation with the County Attorney, ordering the transcript, and conferring with the County Attorney (Tr. 396, 408). He further affirms that Betty Steinmetz was told the appeal was dismissed in 1972 and he told her that Judge Luedke had signed the Order clearing her son (Tr. 402, 426).

"Feeling she had been deceived, Betty Steinmetz retained Clarence Belue, Attorney at Law, who settled her case against the Respondent for $4,650.00. Respondent's client collected more than he paid the Respondent (Tr. 174, 188, 189). In settling the case with the Steinmetzes, the Respondent obtained a Release from them dated April 12, 1976. The Release indicated: "This Release or any payment made pursuant thereto shall (not) (sic) in anyway constitute admission of liability by the said James A. Reno, the same being denied.' (Respondent's Ex. 'D')."

The Commission found that respondent violated his duty to Betty Steinmetz pursuant to DR1-102.

The Commission on Practice has recommended that respondent James A. Reno be disbarred from the practice of law in the State of Montana; that he be assessed the costs of these proceedings and that he be further ordered to make complete restitution of the moneys loaned to Waring Corporation, in the amount of $22,127.74, together with interest thereon at the rate of Eight and One-half per-

cent (8½%) per annum, from June 25, 1973, and that said sum be paid within 90 days.

This Court has carefully reviewed the charges made against respondent; the two-volume transcript of the formal hearing; the evidence, findings of fact, conclusions of law, and recommendations of the Commission; and the exceptions to the same filed by respondent. We have also reviewed the briefs filed on behalf of the Commission and on behalf of respondent. We find substantial credible evidence warranting discipline of the respondent.

In our opinion, the professional misconduct of respondent, James A. Reno, requires disbarment. We therefore order and adjudge that James A. Reno be disbarred; that his name be stricken from the role of attorneys and counselors of this Court; and that he be prohibited from practicing as an attorney and counselor in all the courts of this State.

The Clerk of this Court shall give notice of this order to James A. Reno, his counsel, the Clerks of all the District Courts in Montana, the Chairman and Secretary of the Commission on Practice, the Clerk of the United States District Court for the District of Montana, and the Clerk of the Ninth United States Circuit Court of Appeals.

Further, respondent is ordered to make complete restitution of the moneys loaned to Waring Corporation in the amount of $22,127.74, together with interest thereon at a rate of 8½% per annum from June 25, 1973 until paid, and that said restitution shall be paid within 90 days of the date of this order.

IT IS FURTHER ORDERED AND ADJUDGED that respondent be assessed the costs of these proceedings in a sum to be certified to this Court by the Chairman and Secretary of the Commission on Practice within 15 days of the date hereof; and that said payment be made to the Clerk of this Court within 30 days thereafter, a copy of the costs so fixed to be served on respondent at the time of filing.

Further, to protect the interests of respondent's clients, respondent, and in the interest of justice, this Court refers the further supervision and processing of any and all legal matters being handled by

269

James A. Reno to the Honorable Charles Luedke, Chief District Judge, of the Thirteenth Judicial District of the State of Montana. The Clerk is directed to mail a true copy of this order to Judge Luedke.

IT IS SO ORDERED.